# IN THE SUPREME COURT OF THE STATE OF NEVADA

TRAVERS ARTHUR GREENE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 55971

FILED

JUN 24 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from an order denying appellant Travers Arthur Greene's postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Donald M. Mosley, Judge.

Greene was convicted of conspiracy to commit murder, two counts of first-degree murder with the use of a deadly weapon, and possession of a stolen vehicle for travelling to Sunrise Mountain in a stolen car and shooting two campers, Christopher Peyton and Deborah Farris, in September 1994. He was sentenced to death. This court affirmed his convictions and sentence. *Greene v. State*, 113 Nev. 157, 931 P.2d 54 (1997). Greene unsuccessfully sought postconviction relief in a prior petition. *See Greene v. State*, Docket No. 45023 (Order of Affirmance, November 14, 2006). Greene filed the instant petition in the district court on February 28, 2008. The district court denied the petition. This appeal followed.

*Procedural bars*

Greene's postconviction petition for a writ of habeas corpus is subject to several procedural bars. The petition was untimely as it was filed more than one year after this court issued its remittitur on direct

16-19771

appeal. NRS 34.726(1).[1] To the extent that the petition raised the same claims that were raised in prior petitions, it was successive. NRS 34.810(2). To the extent that the petition raised new claims that could have been litigated in a prior proceeding, it constituted an abuse of the writ. NRS 34.810(1)(b). The petition was therefore procedurally barred absent a demonstration of good cause and prejudice. NRS 34.726(1); NRS 34.810(1)(b), (3). As cause to overcome the procedural default rules, Greene contends that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that prior postconviction counsel provided ineffective assistance.

*Brady violation*

Greene argues that the district court erred in concluding that he failed to demonstrate good cause and prejudice based on his claim that the State withheld inducements offered to Anthony Fisher in exchange for his testimony. *See State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) ("Good cause and prejudice parallel the second and third *Brady* components; in other words, proving that the State withheld the evidence generally establishes cause, and proving that the withheld evidence was material establishes prejudice."). We disagree. While the State had knowledge of its meetings with Fisher, it was not the exclusive repository of that information. *See Rippo v. State*, 113 Nev. 1239, 1257, 946 P.2d 1017, 1028 (1997) (noting that "a *Brady* violation does not result if the defendant, exercising reasonable diligence, could have obtained the information"). The record indicates that Fisher, his mother, and his

---

[1]The petition was also filed more than one year after the effective date of NRS 34.726. *See* 1991 Nev. Stat., ch. 44, § 33, at 92; *see also Pellegrini v. State*, 117 Nev. 860, 874-75, 34 P.3d 519, 529 (2001).

girlfriend were present during the visits when Greene alleges that the attorneys offered favorable treatment in exchange for Fisher's testimony. Greene did not allege that an impediment external to the defense prevented him from contacting these witnesses sooner. Moreover, he failed to demonstrate that the additional impeachment evidence was material for two reasons. *See Jimenez v. State*, 112 Nev. 610, 619, 918 P.2d 687, 692 (1996) (noting that when there is a specific request for evidence, materiality is satisfied if there is a reasonable possibility that the omitted evidence would have affected the outcome of trial). First, he did not demonstrate that the State offered Fisher an inducement to testify. At the evidentiary hearing, Fisher denied having any expectation of receiving favorable treatment from the State in exchange for his testimony. The district court found this testimony credible. While this testimony contradicted his prior declaration, the district court was in the best position to assess Fisher's credibility and that determination is entitled to deference so long as it is supported by substantial evidence. *See Little v. Warden*, 117 Nev. 845, 854, 34 P.3d 540, 546 (2001). Second, even if Greene demonstrated the existence of an inducement, this additional impeachment evidence would not have altered the outcome at trial. Greene's admission to Fisher that he killed the victims was persuasive, but not indispensable, evidence. Witnesses saw Greene steal the murder weapon and hide it and one witness saw Greene murder the victims. In addition, Greene admitted involvement in the killings to two other witnesses. Therefore, the district court did not err in denying this claim.[2]

---

[2]Greene also argues that the district court erred in limiting
*continued on next page...*

## Ineffective assistance of postconviction counsel

Greene contends that the district court erred in denying his claims that postconviction counsel was ineffective for failing to challenge trial counsel's failure to investigate and present mitigation evidence and challenge evidence introduced by the State during sentencing. The ineffective assistance of postconviction counsel may establish cause and prejudice to file a second postconviction petition where, as here, the appointment of counsel was mandated by statute. *See Rippo v. State*, 132 Nev., Adv. Op. 11, at 9, ___ P.3d ___, ___ (2016); *Crump v. Warden*, 113 Nev. 293, 304-05, 934 P.2d 247, 254 (1997). Although his postconviction-counsel claims are subject to the time limit set forth in NRS 34.726(1), *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 235, 112 P.3d 1070, 1077 (2005), and they therefore had to be raised within a reasonable time after they became available, *Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003), Greene's claims of ineffective assistance of postconviction counsel were not available until this court affirmed the district court order denying his first postconviction petition. *Rippo*, 132 Nev., Adv. Op. 11, ___ P.3d. at ___. Because the petition was filed within one year of the issuance of remittitur from this court's decision affirming the denial of Greene's first postconviction petition, we conclude that his

---

*...continued*
discovery and denying his request to call additional witnesses at the evidentiary hearing. As he failed to demonstrate that this evidence was material, the district court did not abuse its discretion in denying Greene's request to call further witnesses related to this claim. *See generally Mitchell v. State*, 124 Nev. 807, 813-16, 192 P.3d 721, 725-27 (2008) (recognizing that court's actions pursuant to its inherent authority are reviewed for abuse of discretion).

(O) 1947A

petition asserting postconviction counsel claims as good cause for filing a second petition was filed within a reasonable time. *Id.*

Greene must demonstrate that his postconviction counsel's performance was deficient for failing to raise the underlying claims of ineffective assistance of trial counsel in his prior petition, and that prejudice resulted. *See Rippo,* 132 Nev., Adv. Op. 11, at 20-22, ___ P.3d at ___ (adopting *Strickland* analysis for ineffective assistance of postconviction counsel claims); *see also Crump,* 113 Nev. at 304-05, 934 P.2d at 254. Both deficiency and prejudice must be shown, *Rippo,* 132 Nev., Adv. Op. 11, at 20-22, ___ P.3d at ___, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State,* 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

First, Greene contends that postconviction counsel was ineffective for failing to assert that trial counsel should have obtained or introduced mitigation evidence at trial that included his mental health records, expert testimony regarding his mental state and drug intoxication at the time of the offense, expert testimony regarding the criminogenic effects of the California Youth Authority (CYA), testimony and records concerning his prior molestation, testimony about physical abuse that Greene suffered, and other sources concerning his drug intoxication. We conclude that Greene failed to demonstrate that the additional evidence would have altered the outcome of trial and thus form the basis of a successful trial-counsel claim. The jury found two aggravating

circumstances with regard to each murder: the murder was committed at random and without apparent motive and Greene was convicted of more than one count of first-degree murder at trial. These are compelling aggravating circumstances. Greene killed two random strangers merely because he wanted to experiment with a stolen firearm. The jury was also aware that Greene began his criminal career as a teen and his behavior escalated from petty to violent crimes. He was even involved in two shootings in one night roughly two months before the murders.

The additional mitigation evidence is not powerful enough to mitigate the instant crimes. The new evidence concerning Greene's sexual abuse is potent; however, the jury was already aware that he had been repeatedly molested and did not find that evidence mitigating. As the jury did not find the evidence of his sexual abuse mitigating, it is not likely that it would have found the new evidence of physical abuse more persuasive. Greene's evidence of psychological conditions, impulse control problems, and phencyclidine (PCP) abuse is rendered less compelling by the fact that the crimes do not appear to be the product of a rash act. Instead, after Greene and Leonard Winfrey discovered the victims' car, Greene approached the victims quietly, shot Peyton while he slept, cleared a jam in the assault rifle, and shot Farris as she pleaded for her life. Notably, in his post-arrest statement, Greene denied that he was intoxicated by PCP at the time of the crime. Therefore, the district court did not err in concluding that postconviction counsel was not ineffective as trial counsel's decision to not introduce this evidence could have been the result of reasonable trial strategy.

Second, Greene contends that postconviction counsel was ineffective for not asserting a claim that trial counsel should have objected

to the introduction of his prior juvenile convictions during the penalty phase of trial under *Roper v. Simmons*, 543 U.S. 551 (2005). We disagree. *Roper* was not decided until after the district court denied Greene's first petition. Therefore, Greene's counsel could not have litigated this claim during the pendency of the first petition. Further, Greene failed to demonstrate prejudice. *Roper* proscribed the imposition of the death penalty on juvenile offenders, 543 U.S. at 568, but it did not speak to the evidence admissible during a capital penalty hearing, *Johnson v. State*, 122 Nev. 1344, 1353, 148 P.3d 767, 774 (2006).[3]

*Law-of-the-case doctrine*

Greene contends that the district court erred in denying his claim regarding the premeditation-and-deliberation instruction as barred by the law-of-the-case doctrine. "When an appellate court states a principle or rule of law necessary to a decision, the principle or rule becomes the law of the case and must be followed throughout its subsequent progress, both in the lower court and upon subsequent appeal." *Wickliffe v. Sunrise Hospital*, 104 Nev. 777, 780, 766 P.2d 1322, 1324 (1988). This court has the discretion to "revisit the wisdom of its legal conclusions when it determines that further discussion is warranted," *Pellegrini v. State*, 117 Nev. 860, 885, 34 P.3d 519, 535-36

---

[3]We reject Greene's claim that the district court erred by denying his claim of cumulative error, as that claim added several assertions of ineffective assistance of trial counsel and trial error that should have been raised on direct appeal or in his prior postconviction petition and he has not demonstrated good cause or prejudice to overcome the procedural default. To the extent that Greene's cumulative-error claim relies on claims that supported a previous cumulative-error claim, further consideration is barred by the law-of-the-case doctrine. *See Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).



(2001), and may "'depart from our prior holdings only where we determine that they are so clearly erroneous that continued adherence to them would work a manifest injustice,'" *Hsu v. County of Clark*, 123 Nev. 625, 631, 173 P.3d 724, 729 (2007) (quoting *Clem v. State*, 119 Nev. 615, 620, 81 P.3d 521, 525 (2003)).

Greene argues that the Ninth Circuit Court of Appeals' decision in *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), provided a basis for this court to revisit his challenge to the premeditation-and-deliberation instruction (the *Kazalyn*[4] instruction). Greene contends that the instruction was erroneous under *Byford*. We disagree. Greene's conviction was final over two years before this court disapproved of the *Kazalyn* instruction and set forth instructions to use in the future in *Byford*, and therefore, *Byford* does not apply. *See Nika v. State*, 124 Nev. 1272, 1284-85, 198 P.3d 839, 847-49 (2008). Moreover, *Byford* did not alter the law in effect when Greene's conviction became final; rather, it changed the law prospectively. And because the change concerned a matter of state law, the *Byford* decision did not implicate federal constitutional concerns. *See id.* Therefore, Greene failed to demonstrate that a continued adherence to the prior ruling would work a manifest injustice in this case.[5]

---

[4]*Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992), *prospectively modified by Byford v. State*, 116 Nev. 215, 236-37, 994 P.2d 700, 714 (2000).

[5]We reject Greene's claim that the district court erred in denying his challenges concerning the at-random aggravating circumstance, the administration of anti-psychotic medication during trial, the ineffective assistance of appellate counsel, and cumulative error because he merely reargues the merits of these claims and he has not pointed to any

*continued on next page...*

 

*Fundamental miscarriage of justice*

Greene contends that he is actually innocent of first-degree murder due to trial counsel's failure to investigate and present evidence of his mental impairments and drug intoxication at the time of the murders.

When a petitioner cannot demonstrate good cause, the district court may nonetheless excuse a procedural bar if the petitioner demonstrates that failure to consider the petition would result in a fundamental miscarriage of justice. *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. A fundamental miscarriage of justice requires "a colorable showing" that the petitioner is "actually innocent of the crime," *id.*, meaning "factual innocence, not mere legal insufficiency," *Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) (internal quotation marks and alteration omitted). This requires the petitioner to present new evidence of his innocence. *See House v. Bell*, 547 U.S. 518, 537 (2006) ("[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthiness eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995))); *Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). The petitioner "must show that it is more likely than not that no reasonable juror would have convicted him absent a constitutional

---

*...continued*
authority since the denial of his prior petition that necessitates a departure from this court's prior holdings. *See Hsu*, 123 Nev. at 630, 173 P.3d at 728-29; *Pellegrini*, 117 Nev. at 885, 34 P.3d at 535-36.

violation." *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537. In deciding whether the petitioner has made that showing, the court must consider the petitioner's claimed innocence in light of all the evidence—both the new and the old. *See Berry v. State*, 131 Nev., Adv. Op. 96, 363 P.3d 1148, 1155-56 (2015).

We conclude that Greene failed to make a "colorable showing" of actual innocence. The psychological evaluation indicated that Greene was not able to regulate his impulsivity. In addition, as his particular psychological issues rendered him more susceptible to adverse effects from drug abuse, the evaluation concluded that the murders may have been the result of delusional or hallucinatory experience from a combination of his chronic methamphetamine abuse and PCP intoxication or the result of impulsive violence associated with PCP usage. In contrast, the evidence produced at trial strongly supports a conclusion that the murder was premeditated and deliberate. After gaining possession of the assault rifle, Greene wanted to shoot it. After shooting it, Greene wanted to know what the bullets would do if they struck something. While out shooting, Greene directed his friend to stop the car near the victims, walked over to the sleeping victims, and shot Peyton as he slept. When he attempted to murder Farris as she pleaded for her life, the firearm malfunctioned. Greene had the presence of mind to clear the malfunction and shoot her. Based on the total record, the district court did not err in concluding that Greene failed to demonstrate that it was more likely than not that no reasonable juror would have convicted him absent the failure to introduce the new evidence.

*Full and fair opportunity to litigate*

Greene contends that he did not have a full and fair opportunity to litigate his postconviction petition because the district court was biased against capital postconviction petitioners. He also asserts that the district court improperly limited testimony and denied discovery.

*Bias*

Greene asserts that the district court erred in denying his motions to disqualify the district court. He contends that the district court's refusal to provide him with a full and fair opportunity to litigate his claims, coupled with Judge Donald Mosley's pattern and practice of denying other capital petitioners a full and fair opportunity to litigate their claims, demonstrates the habeas court's bias against him.

We conclude that Greene's contention lacks merit. Many of the cases that he has cited do not indicate that Judge Mosley "closed his [ ] mind to the presentation of all the evidence," *Cameron v. State*, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998), but merely show that Judge Mosley attempted to implement procedures for the efficient consideration of postconviction petitions. While Judge Mosley was disqualified from another case out of an abundance of caution, Greene has not cited any language used during his current litigation that shows that Judge Mosley closed his mind to the presentation of the evidence or otherwise "reveal[ed] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Judge Mosley's comments in the present litigation evidence a desire to limit the issues to be presented at subsequent evidentiary hearings. *See In re Petition to Recall Dunleavy*, 104 Nev. 784, 789-90, 769 P.2d 1271, 1275 (1988) (noting that the "rulings and actions of a judge during the course of official judicial proceedings do not establish legally cognizable grounds for

disqualification," but "personal bias necessary to disqualify must 'stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" (quoting *United States v. Beneke*, 449 F.2d 1259, 1260-61 (8th Cir. 1971))). Therefore, the district court did not err in denying the motions to disqualify.

*Denial of full and fair opportunity to litigate*

Greene contends that Judge Mosley denied him a fair opportunity to litigate his postconviction petition by improperly preventing him from calling witnesses or developing evidence.[6]

First, Greene contends that the district court improperly limited the testimony of his postconviction counsel by directing the examination, cutting the examination short, and refusing requests to admit a declaration from postconviction counsel and testimony from trial counsel. We discern no abuse of discretion in limiting his presentation of evidence. *See generally Mitchell v. State*, 124 Nev. 807, 813-16, 192 P.3d 721, 725-27 (2008) (recognizing that a court's actions pursuant to its inherent authority are reviewed for abuse of discretion); *Young v. District Court*, 107 Nev. 642, 646, 818 P.2d 844, 846 (1991) (recognizing a court's inherent power "to control proceedings before it"). By having current counsel ask prior counsel collectively whether she had any strategic reason for failing to discover and present evidence during the first habeas proceeding, the district court acted reasonably to avoid a lengthy

---

[6]To the extent Greene claims that district court denied him a full and fair opportunity to litigate his first postconviction proceeding, that claim is procedurally barred as it should have been litigated in the appeal taken from the denial of his first petition. NRS 34.810(1)(b)(2).

repetitive hearing. Similarly, the district court's order requiring a memorandum of issues to guide subsequent evidentiary hearings furthered the court's goal of efficiently using its time by allowing it to review relevant records prior to the hearing, as Greene's counsel even acknowledged. Moreover, the district court had previously ruled that trial counsel's decision not to present evidence of Greene's mental state or drug intoxication was part of a reasoned trial strategy because counsel concluded the evidence was more damaging than helpful. Therefore, the district court's refusal to allow additional evidence did not deny Greene a full and fair opportunity to litigate.

Second, Greene argues that the district court denied him a full and fair opportunity to litigate the petition by failing to rule on a discovery motion seeking to depose witnesses and disclose records related to Greene's intoxication at the time of the crime, the administration of anti-psychotic medication while in detention, college records, and medical records. We disagree. Most of the witnesses had submitted sworn declarations reflecting their probable deposition and evidentiary hearing testimony. The inquiry at the hearing was whether postconviction counsel was ineffective for failing to challenge trial counsel's failure to investigate these witnesses. Under these circumstances, the district court did not err in implicitly denying Greene's motion for leave to depose the witnesses when it concluded that it was still part of a reasonable trial strategy not to introduce the evidence. As to the records, Greene was arrested two days after the crime, therefore any drug testing or observations during his arrest would have little evidentiary value in determining whether he was intoxicated during the crime. Further, any records related to psychiatric diagnoses and Greene's behavior while using drugs would have little value

in litigating postconviction counsel's effectiveness considering that the court had concluded that trial counsel's decision not to introduce similar evidence was a reasonable trial strategy.

Having considered Greene's contentions and concluded that they lack merit, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

CHERRY, J., with whom, SAITTA, J., agrees, dissenting:

I cannot agree with the majority's conclusion as to Greene's claim that prior counsel were ineffective for failing to investigate and introduce mitigating evidence. In my opinion, the district court erred in rejecting that claim without conducting an evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

Greene submitted considerable mitigation evidence with his petition that he contended prior counsel failed to discover and present to the jury. Several past psychological evaluations described Greene's marked impulsivity. Further, he had been diagnosed with conduct disorder, persistent depressive disorder, and attention deficit-hyperactive disorder. More recently, evaluating professionals opined that Greene's behavior is significantly influenced by his severe psychological deficits. They asserted that Greene lacked the capacity to transform unacceptable impulses into acceptable behavior. His mood instability, coupled with stress, could result in episodes of bizarre behavior and irrational impulses. Additionally, evaluators opined that he was suffering from the chronic effects of methamphetamine abuse at the time of the crime, and those effects augmented his impulsivity and could have resulted in a delusional experience.

New evidence offered with the petition also showed how the events of his youth aggravated his psychological disorders and how those disorders influenced the delinquent behavior of his youth. Although the jury heard some testimony that Greene had been molested, the new evidence described the abuse in greater detail. Other evidence indicated that Greene had been physically abused by an uncle and sexually assaulted by several neighborhood boys. These events caused Greene to withdraw and become prone to destructive behavior. Greene's father did not seek appropriate counseling for him, or adequately discipline his misbehavior, after he was molested. Records of Greene's expulsions and prior juvenile crimes validate the deleterious effects of his disorders, past abuse, and lack of discipline. It is clear that Greene's neurological deficits persisted until the time of the crime. Those who knew Greene when he

lived at the Sunrise Mobile Home Park described him as "gentle, funny, and caring," but was known to become "argumentative, belligerent, paranoid, and violent" as well as "explode in fits of rage."

In its case in aggravation, the State undoubtedly presented every crime or prior bad act for which it could find evidentiary support in its effort to convince the jury to impose death. As well it should have—Greene's crimes, whether those charged or not, were egregious. But fairness dictates that competent counsel should have investigated and presented evidence of every mental disorder that troubled Greene, every predator who victimized him as a child, and every failure of his family to address his trauma or remedy his behavior. Therefore, I disagree with the majority's conclusion that counsel's decision not to introduce this testimony was reasonable trial strategy. The majority also concludes that such evidence would not have been persuasive given how Greene's crimes did not appear to be a "rash act." However, mitigation evidence need not excuse or justify the crime. *Hollaway v. State*, 116 Nev. 732, 743, 6 P.3d 987, 995 (2000). It need only provide some "basis for jurors to find the crime mitigated and impose a less severe sentence." *Id.*

I further disagree with the majority's conclusion that the district court could have accurately assessed the effect of this evidence based solely on the trial evidence and proffered affidavits. Although the decision to impose death should not result from passion or prejudice, *see* NRS 177.055(2)(d), it is not a cold, detached determination based purely on factual proof, *see Nunnery v. State*, 127 Nev. 749, 775-76, 263 P.3d 235, 252-53 (2011) (noting that the weighing determination is not a factual finding, but a moral determination); *see also McConnell v. State*, 125 Nev. 243, 254, 212 P.3d 307, 315 (2009) ("As the United States Supreme Court

has stated, the jury's decision whether to impose a sentence of death is a moral decision that is not susceptible to proof." (citing *Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002); *Caldwell v. Mississippi*, 472 U.S. 320 (1985))). While guided by evidence, the sentencing decision depends greatly on the sensibility and morality of the jurors imposing it. In this case, a review of the mere facts presented to the court and proffered documentary evidence is inadequate to assess whether the jury would have imposed death given the new evidence. *See Graves v. State*, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996) ("The cold record is a poor substitute for demeanor observation."). An evidentiary hearing is necessary, not merely to assess the credibility of the omitted evidence, but to weigh its resonance. Accordingly, I would reverse the judgment of the district court and remand for an evidentiary hearing.

_____, J.
Cherry

I concur:

_____, J.
Saitta

cc: Eighth Judicial District Court Dept. 14
Clark County District Attorney
Attorney General/Las Vegas
Federal Public Defender/Las Vegas
Eighth District Court Clerk
Travers A. Greene

