**FIRST EQUITY CORPORATION OF FLORIDA, Robert Cornfeld and Floyd Watkins, Plaintiffs,**

v.

**STANDARD & POOR'S CORPORATION, Defendant.**

**No. 86 Civ. 5913 (MBM).**

United States District Court, S.D. New York.

July 22, 1988.

Eric Seiler, Bruce Kaplan, Friedman & Kaplan, New York City, for plaintiffs.

Steve Lieberman, Cahill Gordon & Reindel, New York City, for defendant.

OPINION AND ORDER

MUKASEY, District Judge.

Defendant Standard & Poor's moves for summary judgment pursuant to Rule 56, Fed.R.Civ.P., dismissing plaintiffs' claim for fraud, the only claim remaining in this action. For the reasons set forth below, that motion is granted.

## I.

This action arises out of an alleged error printed in defendant Standard & Poor's publication *Standard Corporation Records* ("*Corporation Records*") which contains descriptions of the terms and provisions of corporate bonds. Plaintiff First Equity is a Florida broker and investment advisor which subscribed to *Corporation Records;* plaintiffs Cornfeld and Watkins are two of First Equity's brokerage clients.

Plaintiffs claim they suffered damages in relying on a purportedly inaccurate description of Pan American Airways, Inc. convertible bonds that appeared in the June 1985 volume of *Corporation Records.* The portion of the description alleged to be inaccurate reads as follows:

> CONVERTIBLE thru maturity on the 15th day preceding earlier/redemption date into Co.'s Com. Stock at $5.50 a share, with no adjustment for interest (unless called for redemption after record date and before interest date) or cash dividends.

This portion of the description was based on the prospectus issued by Pan Am in connection with the bonds which contained the following description of the bonds' conversion features:

> When Trust Notes are converted after a record date for an interest payment and before the interest payment date, the amount of such interest must accompany Trust Notes surrendered for conversion; otherwise no adjustments in respect of interest or dividends will be made upon the conversion of Trust Notes.

Plaintiffs claim that based on the description of the bonds published in *Corporation Records,* they believed that they were entitled to accrued interest to be paid upon conversion of the bonds into common stock if the bonds were called for redemption between the record date and the interest payment date, the period set forth in parentheses. Because Pan Am was required to give 30 days notice before redemption, as discussed elsewhere in the description of the bonds, plaintiffs believed that once July 15 had passed without a call for redemption, the bonds could not be called before the record date of August 15. Plaintiffs claim to have understood that if the bonds were called for redemption during the period set forth in the parentheses, *i.e.,* between August 15 and September 1, they would receive accrued interest upon conversion. Plaintiffs claim that based on the description of the Pan Am bonds in *Corporation Records,* they decided not to sell their bonds and to buy more of the bonds.

## II.

Standard & Poor's made a prior motion before Judge Gerard L. Goettel of this Court to dismiss the complaint which alleged in the alternative negligent misrepresentation and fraud. Judge Goettel declined to dismiss the fraud claim but held that Standard & Poor's could not be held liable for negligent misrepresentation:

> It is widely recognized that in the absence of a contract, fiduciary relationship, or intent to cause injury, a newspaper publisher is not liable to a member of the public for a non-defamatory negligent misstatement of an item of news, "unless he wilfully ... circulates it knowing it to be false, and it is calculated to and does ... result in injury to another person."

*First Equity Corp. v. Standard & Poor's Corp.,* 670 F.Supp. 115, 117 (S.D.N.Y.1987) (citation omitted). Judge Goettel cited as a "seminal case for this proposition" *Jaillet v. Cashman,* 115 Misc. 383, 189 N.Y.S. 743 (Sup.Ct.1921), *aff'd mem.,* 202 A.D. 805, 194 N.Y.S. 947 (App.Div.1922), *aff'd mem.,* 235 N.Y. 511, 139 N.E. 714 (1923).

Judge Goettel expressly rejected plaintiffs' contention that they could establish scienter under Florida law by showing that "the alleged misrepresentation was made without knowledge as to its truth or falsity or that it was made under circumstances in which the defendant ought to have known, if it did not know, that the misrepresentation was false." *Id.* at 118. Judge Goettel ruled that:

> notwithstanding that Florida law might under ordinary circumstances allow a negligent misrepresentation to support a

claim of fraud, it does not when the charge of fraud is leveled against a newspaper publisher or other defendant in a comparable position.

Because both New York and Florida follow the *Jaillet* rule, the law of both states precludes the plaintiff's fraud claims except to the extent that they are based on the allegation that the defendant actually knew that the description of the bonds was incorrect.

*Id.* at 119. Having determined that "a Florida court would, if presented with the question, follow the *Jaillet* rule," Judge Goettel held that it was unnecessary to decide whether Florida or New York law governed the case, and dismissed the negligent misrepresentation claim.

### III.

■ As a threshold matter on Standard & Poor's current motion, the parties dispute the meaning of Judge Goettel's ruling as to the degree of scienter plaintiffs must establish to prevail on the fraud claim. Defendant argues that under Judge Goettel's ruling, plaintiffs must prove that the description was published with actual knowledge of its falsity; plaintiffs argue, on the other hand, that they need satisfy only the scienter requirement for common law fraud by showing either actual knowledge or recklessness as to falsity. On its face, Judge Goettel's decision appears to hold unambiguously that the *Jaillet* standard of culpability applies in this case and that accordingly plaintiffs can prevail on their fraud claim only by proving that defendant published the allegedly false description of the bonds with actual knowledge of its falsity. Plaintiffs, however, challenge this interpretation of Judge Goettel's opinion. They claim that at a conference following issuance of the opinion, their counsel advised Judge Goettel that although they had not developed any evidence of actual knowledge, they believed they could establish scienter through proof of recklessness, and that Judge Goettel responded by stating that he had not intended in his opinion to change the common law requirements for fraud. Plaintiffs claim that by making this statement, Judge

Goettel was, in effect, clarifying the import of his written opinion.

I find that the high degree of scienter imposed by Judge Goettel in his written decision reported at 670 F.Supp. 115 is consistent with well-established First Amendment principles requiring a plaintiff to demonstrate actual malice when seeking to impose liability on a newspaper for publication of a non-defamatory misstatement. *See Time, Inc. v. Hill,* 385 U.S. 374, 387, 87 S.Ct. 534, 541, 17 L.Ed.2d 456 (1967); *Libertelli v. Hoffman–LaRoche, Inc.,* 7 Media L.Reptr. 1735 (S.D.N.Y.1981); *Tumminello v. Bergen Evening Record, Inc.,* 454 F.Supp. 1156 (D.N.J.1978) (stating that "New Jersey *could not,* consistent with the requirements of the First Amendment, impose liability for a negligently untruthful new story. Recovery may be had at best only for knowing or reckless falsehood." (emphasis in original; citation omitted)).

In *Libertelli, supra,* the plaintiff alleged that she had become addicted to valium and sued defendant, publisher of the *Physician's Desk Reference* ("PDR"), for negligent omission of certain information from its description of valium published in the PDR. In granting the publisher's motion to dismiss the complaint, Judge Sweet ruled:

> the applicable First Amendment standard for imposing liability on publishers for erroneous informational articles is substantively indistinguishable from the tort standard for false advertising set forth in *Suarez* [*v. Underwood,* 103 Misc.2d 445, 426 N.Y.S.2d 208 (Sup.Ct. Queens Co.1980), holding that a "newspaper is only liable if it publishes a false advertisement maliciously or with intent to harm another or acts with total reckless abandon," 103 Misc.2d at 448, 426 N.Y.S. 2d at 210]. Under the line of cases including *New York Times v. Sullivan, supra,* and *Time, Inc. v. Hill,* 358 [385] U.S. 374 [87 S.Ct. 534, 17 L.Ed.2d 456] (1967) a publisher is not liable for false reports of matters of public interest absent knowledge of falsity or reckless disregard of the truth.

*Id.* at 1736.

Accordingly, because the First Amendment requires a demonstration of actual

malice where plaintiff seeks to impose liability on a newspaper for publication of a non-defamatory misstatement, I find it unnecessary to consider plaintiffs' argument that despite his seemingly unambiguous written opinion, Judge Goettel intended to impose a lower standard of culpability on Standard & Poor's.

To prevail here, plaintiffs must show either that Standard & Poor's published the description with actual knowledge of its falsity or with reckless disregard of its truth or falsity. To show reckless disregard, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).

### IV.

Summary judgment is appropriate where there are no issues of material fact remaining to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (*per curiam*). As the Supreme Court recently ruled with regard to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510. Even where, as here, a party's state of mind is at issue, summary judgment dismissing the complaint is appropriate where no solid circumstantial evidence exists supporting the plaintiff's case. *Clements v. County of Nassau,* 835 F.2d 1000, 1005 (2d Cir.1987).

Plaintiffs apparently concede that defendant did not publish the description with actual knowledge of its alleged falsity, and claim instead that defendant published the description with reckless disregard as to its falsity. As discussed above, in order for plaintiffs to prevail on a theory of recklessness, they must show that defendant published the description after "entertain[ing] serious doubt" as to its truth. *St. Amant, supra,* 390 U.S. at 731, 88 S.Ct. at 1325. But plaintiffs have not come forward with any evidence that Standard & Poor's published the description of the Pan Am bonds recklessly, and accordingly, summary judgment must be granted dismissing the fraud claim.

Plaintiffs attempt to demonstrate recklessness by pointing out alleged inconsistencies in the understandings held by various people at Standard & Poor's including John Teter, the publisher of *Corporation Records,* John Jantz, the managing editor for corporate descriptions, and Louis Camelotto, a statistician who drafted the description, as to the meaning and purpose of the description. Plaintiffs rely heavily on telephone conversations between First Equity's Andy Fernandez, John Jantz, and Mike Antinoro, another Standard & Poor's employee, which occurred several months after the description was published, during which Jantz and Antinoro allegedly confirmed that Pan Am would pay interest on the bonds on conversion. Plaintiffs claim that these representations by Jantz and Antinoro, together with the testimony of other Standard & Poor's employees that they understood that no interest would be paid on conversion of the bonds, demonstrate that Standard & Poor's had no understanding as to the meaning of the description when it was published and thus support a finding of recklessness. But this evidence, even if accepted at face value, does not nearly show that Standard & Poor's published the description of the bonds with serious doubt as to its truth.

Plaintiffs' theory of liability is premised on the principle that knowledge of a corporate employee is imputed to the corporation. *See, e.g., United States v. Bank of New England,* 821 F.2d 844 (1st Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987). Arguing from this principle, plaintiffs seek to attribute to Standard & Poor's the combined knowledge of several of its employees in order to hold the corporation liable for fraud. But plain-

**260**

tiffs' theory is flawed. While it is not disputed that a corporation may be charged with the collective knowledge of its employees, it does not follow that the corporation may be deemed to have a culpable state of mind when that state of mind is possessed by no single employee. A corporation can be held to have a particular state of mind only when that state of mind is possessed by a single individual. For example, in *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1386–87 (9th Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987), the Ninth Circuit rejected defendant's argument that where the plaintiff buyer's accounting department knew the price that was paid to the seller, and the buyer's legal department knew the contractual ceiling on price, the employees' collective knowledge of those facts rendered the buyer's overpayment knowing and voluntary. Accordingly, I find meritless plaintiffs' contention that alleged inconsistencies among Standard & Poor's employees' understandings as to the meaning and purpose of the description support the inference that Standard & Poor's published the description with recklessness as defined above.

Because I hold that plaintiffs have failed to demonstrate the existence of any genuine issue of fact as to defendant's scienter, I need not address defendant's remaining arguments regarding either absence of reliance or additional First Amendment considerations.

For the reasons set forth above, summary judgment for defendant on the remaining fraud claim is granted, and the complaint is dismissed.

SO ORDERED.