In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 15-2752, 15-3410

ALBERTO MARTINEZ, *et al.*,

*Plaintiffs-Appellees,*

*v.*

CITY OF CHICAGO, *et al.*,

*Defendants,*

*and*

MARY E. MCCLELLAN,

*Respondent-Appellant.*

_____

IN RE: MARY E. MCCLELLAN,

*Petitioner.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 5938 — **John F. Grady, Elaine E. Bucklo**, *Judges.*

_____

ARGUED MARCH 30, 2016 — DECIDED MAY 23, 2016

_____

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

POSNER, *Circuit Judge*. The principal question presented by this appeal is whether an order by a district court imposing a sanction on a lawyer for misconduct in a case before the court can *ever* be appealed if the sanction lacks a monetary component.

As part of a lawsuit charging the City of Chicago and others with malicious prosecution and other torts, the plaintiffs sought by subpoena to discover documents lodged in the Cook County State's Attorney's Office. The lawyers representing the Office, who included Mary McClellan, the appellant, told the plaintiffs' lawyers that the files they were looking for no longer existed. A year later, however, when Judge Grady, the presiding judge, ordered the Office to allow the plaintiffs' lawyers to inspect 181 boxes of documents stored in a warehouse, the lawyers quickly found the documents they'd asked for—and moved the district court to sanction McClellan and her colleagues for obstructing the plaintiffs' discovery by insisting that the documents the plaintiffs needed no longer existed.

Some months after the tort suit ended in the plaintiffs' acceptance of an offer of judgment, the judge granted the motion for sanctions and ordered McClellan and the State's Attorney's Office to pay, as sanctions for what the judge concluded was indeed seriously obstructive conduct in discovery, the fees and costs that their misconduct had imposed on the plaintiffs. It fell to Judge Bucklo, who took over the case when Judge Grady retired in 2015, to calculate the dollar amount of the sanctions. She ordered McClellan and the

State's Attorney's Office to pay the plaintiffs a total of $35,522.94 in fees and costs.

Judge Grady had based his finding of attorney misconduct on both 28 U.S.C. § 1927 and the inherent authority of a federal court to punish attorney misconduct in a case before it. In the baroque language beloved of legislatures and courts, the statute provides that "any attorney … in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Federal judges can also sanction attorneys appearing before them for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO Inc.*, 501 U.S. 32, 45–46 (1991). Bad faith includes "recklessly making a frivolous claim." *Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009); see also *Egan v. Pineda*, 808 F.3d 1180 (7th Cir. 2015). The judge could also have invoked in support of his ruling Fed. R. Civ. P. 37(a)(5)(A), which authorizes the award of attorneys' fees incurred as a result of discovery abuse.

The judge explained (record citations omitted) that

ASA [assistant state's attorney] McClellan recklessly adhered to the position that the documents the plaintiffs sought did not exist. … [T]he CCSAO [Cook County State's Attorney's Office, McClellan's employer] initially took the position that, except for a few "special" cases, it destroys all misdemeanor case files immediately after trial. ASA McClellan first introduced [a] distinction between "jury" and "non-jury" misdemeanors in February 2013. The fact that McClellan did not acknowledge that the CCSAO had changed its position created unnecessary con-

fusion. On the other hand, at that point in the proceedings, it appears that both McClellan and Fallon [another assistant state's attorney] were in the dark about the CCSAO's actual policy. … In response to [a] subpoena, the CCSAO disclosed for the first time that there were 31 boxes of misdemeanor files from the relevant year (2009), and 180 boxes of misdemeanor files, total. McClellan confidently stated at the April 3, 2013 hearing on the CCSAO's motion to quash that these boxes did not contain materials for misdemeanor offenses concluded by bench trials. The most generous inference that we can draw from McClellan's statement is that she did not speak with the custodian of those boxes before making this statement. If she had, she would have learned that they contained materials from misdemeanor bench trials. This is reckless conduct. She also recklessly overstated the amount of time and resources it would take to inspect the files, leading the court to order an unnecessary intermediate step to determine whether the plaintiffs' proposed inspection was feasible. [She said] "the amount of resources it's going to take to pull 180 boxes and have them available to counsel is extraordinary." [Told by Jared Kosoglad, the plaintiffs' lawyer, that the inspection could be completed in an hour or two,] McClellan insisted that it could not be done in that amount of time and raised other argumentative objections. She continued to obstruct discovery at the inspection itself by refusing … requests for reasonable accommodations. The court overruled McClellan's objections and, consistent with Mr. Kosoglad's estimate, he and his colleagues found the documents within a matter of minutes.

The CCSAO produced 1,000 responsive documents in April and May 2013, contrary to McClellan's assurances that the documents the plaintiffs sought did not exist. McClellan asserted a questionable privilege claim with respect to a subset of the relevant documents, which she

withdrew after plaintiffs moved to compel their production. Given the history of the case to that point, the plaintiffs' subpoena seeking to inspect the original file was eminently reasonable. Nevertheless, McClellan continued to raise bogus objections, which the court overruled. The plaintiffs finally received all the documents that they were seeking on July 26, 2013, mercifully ending the CCSAO's participation in this case. In sum, we conclude that McClellan's conduct was reckless and undertaken in bad faith [a wordy formula for sanctionable conduct].

McClellan appealed to us, but before the appeal was heard the entire $35,522.94 in money sanctions was paid by the Cook County State's Attorney's Office, leaving McClellan owing nothing. She didn't drop her appeal, however, doubtless because if Judge Grady's sanctions order stands it will have a number of adverse consequences for her professionally, such as requiring her—should she ever move for admission to the bar of another court—to acknowledge having been censured in a judicial order and ordered to contribute to the monetary sanctions that the judge imposed. See, e.g., U.S. District Court for the Northern District of Illinois, *Petition for Admission to the General Bar* (Jan. 2016). Or, should she be asked by judges, potential clients, or potential employers whether her professional conduct had ever been the subject of an investigation, she would have to answer (unless she lied, which could get her into worse trouble) that she had indeed been investigated for professional misconduct—for Judge Grady's order triggered an investigation of her by the Attorney Registration and Disciplinary Commission of the Illinois Supreme Court, though as far as we know no disciplinary action has been taken against her by the ARDC.

In short, because a finding of attorney misconduct in a sanctions order can seriously impair an attorney's professional standing, reputation, and earning possibilities, such an order can't be brushed off as easily as a gnat. It is not just a slap on the wrist, or an angry remark by a judge in the course of a trial or other hearing. It is a judicial order, in this case issued by a respected and experienced federal judge (really two respected and experienced federal judges, as the money sanction imposed by Judge Bucklo, together with her critical comments supportive of Judge Grady's, amplified the gravity of Judge Grady's order).

As a result of the Cook County State's Attorney's Office having paid the entire sanctions judgment, McClellan has no standing to challenge the monetary sanction. But the sanctions order contains detailed findings of professional misconduct by her, findings likely to inflict a significant reputational injury having adverse financial consequences for her. Such an injury, inflicted in a formal judicial order, can be serious enough to make the order appealable. Were the order false, it would be akin to a defamatory accusation.

We are mindful of the holding in *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir. 1984), that "critical comments by a district judge" are not appealable orders. But the district judge in that case had imposed no sanction. He had merely made a comment criticizing two lawyers *en passant* while ruling on another motion. The case settled before a hearing on sanctions was held, and no sanctions order was issued. That case is thus unlike this one, in which a sanctions order was issued that imposed not only a financial obligation on McClellan, one of the targets of the order though spared by

pure luck from having to pay anything, but also what is likely to prove a serious blot on her professional escutcheon.

Subsequently, however, another panel of this court cited *Bolte* for the proposition that "an attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects." *Clark Equipment Co. v. Lift Parts Mfg. Co.*, 972 F.2d 817, 820 (7th Cir. 1992). *Bolte* had not said that, however; and the court in *Clark*, qualifying the passage we just quoted, went on to say that "someday [the lawyer in question] may be able to show concrete harm to his reputation from the bare existence of [the district judge's] unpublished opinions; should that contingency occur, mandamus might be an appropriate remedy." *Id*. Again *Bolte* is cited, and indeed it had suggested that mandamus might be an appropriate remedy if a judge made harshly critical comments about a lawyer in a case that the judge was presiding over. 744 F.2d at 573. But there was no sanctions order in *Bolte*—and in *Clark* the panel vacated the sanctions order entered by the district judge as moot because the attorney's client agreed to pay the sanctions as part of a settlement, though the panel did not vacate the written opinion reprimanding the attorney.

The opinion in *Clark* explains that

a court's interest in having the rules of procedure obeyed never disappears. But that interest is not sufficient to keep a compensatory award alive for appeal after the parties have settled. A district court may sanction abusive behavior directly by *imposing a punitive fine made payable to the court or by imposing non-monetary sanctions. These sanctions cannot be settled by the parties.* Alternatively, however, the court may sanction the offending party by forcing him to compensate his opponent for the trouble he has caused.

This second enforcement mechanism may be analogized to tort remedies, which also regulate behavior by compensating injured parties. Society at large has an interest in enforcing negligence rules, yet we allow tort plaintiffs to bargain away that interest by settling. So too the beneficiary of a *compensatory* sanction may bargain away the court's interest in seeing its rules enforced. *Id*. at 819 (emphases added, citation omitted).

Consistent with this passage, the orders entered by Judges Grady and Bucklo in the present case contain both monetary and nonmonetary sanctions, the latter consisting of the findings of misconduct in Judge Grady's order, findings endorsed by Judge Bucklo. If we are right in analogizing such an order (if unjustified) to a defamatory accusation, there can be no basis for relegating the target of the order to his (in this case her) remedy of mandamus, which has a higher bar to success than an appeal. As pointed out in *Keach v. County of Schenectady*, 593 F.3d 218, 224–26 (2d Cir. 2010), eight federal courts of appeals have held that significant nonmonetary sanctions imposed by a federal judge on a lawyer appearing before him are appealable, at least if imposed by formal order as in the present case. The suggestion in *Clark* that misconduct that doesn't result in "monetary liability" can't support an appeal is contrary to the decisions of those courts unless we say that McClellan (like Voorman, the counterpart to McClellan in the *Clark* case) was subjected to "monetary liability" in being ordered to pay part of the fine levied by Judge Bucklo, though a miraculous intervention (the agreement of McClellan's codefendant, the Cook County State's Attorney, to pay the entire fine) cancelled the liability (Voorman too was saved financially by a settlement that vacated the judgment against him). By virtue of that in-

tervention McClellan paid no financial sanction, and there-
fore under *Clark* would have been remitted to mandamus.
But that places *Clark* in considerable tension not only with
*Bolte* but also with *Insurance Benefit Administrators, Inc. v.
Martin*, 871 F.2d 1354, 1359 (7th Cir. 1989), where we said
that "a finding that a sanction is warranted does not neces-
sarily require a monetary assessment," meaning that mone-
tary liability is not a sine qua non of a sanction order, and we
have seen that such an order can impose injury even if it
does not impose a financial cost on the person sanctioned.
This is a possibility to which the *Clark* decision does not
avert.

It's true that although Judge Grady expressed strong crit-
icism of lawyer McClellan, the only sanctions order that he
had decided to issue (though it was not quantified until the
order issued by his successor, Judge Bucklo) was an order to
pay, which when he issued it would have been expected to
impose at least part of the expense on McClellan. We can
imagine an argument that as in *Bolte* all we have here is a
critical comment by the judge, and that a mere comment
can't be the subject of an appeal. It would indeed be odd to
think that any time a judge criticized a lawyer, whether in
open court or in a written order, the lawyer could treat the
criticism as an appealable ruling. But there is a difference be-
tween a critical comment unjoined to a sanctions order and a
critical comment that appears in and offers justification for a
formal such order. The accusation of misconduct by McClel-
lan is not an add-on to the order issued by Judge Grady but
the justification for it. One of the sanctions that this court oc-
casionally imposes, usually after a rule to show cause has
been issued, is a formal censure or reprimand of a lawyer.
Such a sanction, if imposed on an Illinois lawyer, must be

reported to the Attorney Registration and Disciplinary Commission (or its equivalent in other states), and can result in the suspension of the lawyer's law license, or worse.

The order in this case is best understood as a dual money-professional-ethics order, the two types of sanction being intertwined in it. Had it not been for McClellan's professional misconduct, the monetary penalty imposed in the order would have been smaller than it was. It was the absence of a sanctions order in *Bolte* that made the criticism of the lawyer a mere critical comment rather than a disciplinary ruling. Only *Clark* seems to insist that without a monetary penalty a sanction order cannot be appealed no matter how heavy a weight it places on the sanctioned person, though the order may be reviewable if mandamus is sought.

McClellan points out that a court may not impose sanctions based on conduct not specified in the parties' motions unless it first "provides the attorney with notice regarding the sanctionable conduct and an opportunity to be heard." *The Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). "A general notice that the court is contemplating sanctions is insufficient; rather, the offending party must be on notice of the specific conduct for which she is potentially subject to sanctions." *Johnson v. Cherry*, 422 F.3d 540, 551–52 (7th Cir. 2005). McClellan denies that the plaintiff's motion provided her with sufficient notice. That is simply incorrect.

There is a further complication, however. In contesting Judge Grady's accusation of professional misconduct, McClellan has no adversary. She's not trying to take anything away from anyone; she just wants her name cleared. It's true that the plaintiffs have filed a brief opposing

McClellan and defending Judge Grady's order (Judge Bucklo's monetization of the order is not challenged). But what is the plaintiffs' standing to participate in the appeal? They have nothing to gain from McClellan's professional reputation taking a whack, nothing to lose should she be exonerated. Nor have they cross-appealed, seeking further sanctions against her. Maybe they have some ongoing or anticipated further struggles with the Cook County State's Attorney's Office, but they do not say so and anyway McClellan is no longer employed there.

The absence of an appellee with standing need not, however, and in this case does not, preclude an appeal. McClellan has suffered an injury that would be rectified were we to reverse. She therefore has standing to appeal. It might have been better had we, as in a case involving a contempt of the district court, designated the judge (Judge Bucklo now, because of Judge Grady's retirement) as a respondent and therefore elicited a response to McClellan's argument for reversal. But this omission was not fatal, or even consequential, given that Judge Grady had set forth the grounds of his harsh judgment of McClellan in lucid detail *and* that Judge Bucklo has signified her agreement with that judgment, thus leaving us well positioned to compare the reasons for the sanction with the arguments in McClellan's briefs, and to decide as in any appeal whether to affirm or reverse.

One possible final obstacle to the prompt resolution of this surprisingly complicated case remains to be considered. With Judge Grady out and Judge Bucklo in, one can imagine her deciding that her monetization of the sanctions order—the $35,000 plus—was punishment enough and maybe she should lighten the verbal sanctions on McClellan. Indeed

McClellan urged her to alter Judge Grady's ruling. Judge Bucklo refused, however, noting her agreement with Judge Grady's order.

McClellan contends finally that Judge Grady lacked jurisdiction to impose *any* sanctions on her because the plaintiffs accepted the defendants' offer of judgment *after* the filing of the motion for sanctions but *before* the judge ruled on it. Though a district court retains jurisdiction to impose sanctions after the proceeding in which the sanctionable conduct occurred has ended, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990), McClellan contends that the plaintiffs bargained away their right to the monetary sanction because the litigants agreed that the defendants would pay reasonable attorneys' fees and costs. But that was separate from the sanctions motion filed against McClellan and her colleagues, who were not parties to the litigation. Moreover, the sanctions order serves not only as a means of collecting money from a malefactor to compensate the plaintiffs but also of punishing (and in turn deterring) wrongdoing by attaching a price tag to it.

The significance of the order, as far as McClellan is concerned, is not the price tag but the sharp criticisms of her in the order, and those criticisms were apt and accurate. The plaintiffs had been strung along by McClellan and others at the State's Attorney's Office for more than a year, having been incorrectly informed that the Office had not retained the plaintiffs' criminal case files. McClellan had repeatedly denied that the files existed, without knowing whether they did or did not exist and without conducting a reasonable inquiry into the matter. She had even threatened the plaintiffs' counsel that she would seek sanctions against him if he con-

tinued to request the documents in the face of her denial of their existence. She also tried to prevent him from searching for the files himself. And when the files were finally located she delayed turning them over by advancing a meritless claim of privilege. It took multiple court orders and more than a year of effort for the plaintiffs to obtain all the documents to which they were entitled. The district court did not abuse its discretion in sanctioning her.

In sum, we deny the plaintiffs' motion to dismiss the appeal for lack of jurisdiction, and likewise McClellan's petition for a writ of mandamus, which seeks the same relief as her appeal, just under a different rubric; and we affirm the orders issued by the two judges. But because of the tension between, on the one hand, our analysis and the decisions on which it rests (decisions from eight circuits, as noted in the Second Circuit's decision in *Keach*, cited earlier), and on the other hand our decision in the *Clark* case—which we hereby overrule to the extent that it deems a formal, but non-monetary, sanction not appealable—we have circulated our opinion in advance of publication to all the judges of the court in regular active service, pursuant to Seventh Circuit Rule 40(e), for a determination of whether a majority of the judges want to rehear the case en banc. None of the judges voted to hear it en banc. The judgment is

AFFIRMED.