134 Nev., Advance Opinion 76

IN THE SUPREME COURT OF THE STATE OF NEVADA

VALLEY HEALTH SYSTEM, LLC, A
NEVADA LIMITED LIABILITY
COMPANY, D/B/A CENTENNIAL
HILLS HOSPITAL MEDICAL CENTER;
AND UNIVERSAL HEALTH
SERVICES, INC., A DELAWARE
CORPORATION,
Appellants,
vs.
ESTATE OF JANE DOE, BY AND
THROUGH ITS SPECIAL
ADMINISTRATOR, MISTY PETERSON,
Respondent.

No. 70083

**FILED**

SEP 27 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

HALL PRANGLE & SCHOONVELD,
LLC; MICHAEL PRANGLE, ESQ.;
KENNETH M. WEBSTER, ESQ.; AND
JOHN F. BEMIS, ESQ.,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
RICHARD SCOTTI, DISTRICT JUDGE,
Respondents,
    and
MISTY PETERSON, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF JANE DOE,
Real Party in Interest.

No. 71045

Consolidated appeal from a district court order of dismissal and original petition for a writ of mandamus challenging a district court order

18-37761

finding that petitioners violated RPC 3.3. Eighth Judicial District Court, Clark County; Richard Scotti, Judge.

*Appeal affirmed in Docket No. 70083; petition denied in Docket No. 71045.*

Bailey Kennedy and Dennis L. Kennedy, Joseph A. Liebman, and Joshua P. Gilmore, Las Vegas; Hall Prangle & Schoonveld, LLC, and Michael E. Prangle, Kenneth M. Webster, and John F. Bemis, Las Vegas,
for Appellants/Petitioners.

Murdock & Associates, Chtd., and Robert E. Murdock, Las Vegas; Eckley M. Keach, Chtd., and Eckley M. Keach, Las Vegas,
for Respondent Estate of Jane Doe and Real Party in Interest Misty Peterson, Special Administrator.

Adam Paul Laxalt, Attorney General, Ketan D. Bhirud, General Counsel, Gregory L. Zunino, Bureau Chief of Business and State Services, and Jordan T. Smith, Assistant Solicitor General, Carson City,
for Respondents the Eighth Judicial District Court and The Honorable Richard Scotti, District Judge.

---

BEFORE THE COURT EN BANC.

## *OPINION*

By the Court, HARDESTY, J.:

In this consolidated direct appeal and original petition for a writ of mandamus, we consider an order in which the district court sanctioned a party for discovery violations and found that the party's attorneys violated Nevada Rule of Professional Conduct 3.3(a)(1) by making a false statement of fact or law to the district court.

First, we conclude that the district court acted within its discretion when it sanctioned the party. Second, we are asked to decide whether a district court's citation to the RPC in support of a determination of attorney misconduct causes reputational harm that amounts to a sanction. Because we hold that it does, we entertain the writ but conclude that the district court correctly determined that the attorneys violated RPC 3.3(a)(1). We thus affirm the district court order and deny the writ petition.

*FACTS AND PROCEDURAL HISTORY*

In May 2008, appellants Valley Health System, LLC, d/b/a Centennial Hills Hospital Medical Center, and Universal Health Services, Inc. (collectively, Centennial) hired Steven Farmer as a certified nurses' assistant (CNA). Centennial had a contractual agreement with American Nursing Services to provide hospital staff, including CNAs, to Centennial. Jane Doe was a patient at Centennial during the time Farmer was employed there. On May 14, 2008, Farmer sexually assaulted Doe in her hospital room.

On May 15 and 16, 2008, Farmer sexually assaulted another patient, R.C., at Centennial. The assault was reported to Centennial, and Centennial began an internal investigation, hiring petitioners (collectively, Hall Prangle) as part of the investigation. While investigating the assault involving R.C., the attorneys from Hall Prangle interviewed several nurses employed at Centennial, including Margaret Wolfe in June 2008, Christine Murray in July 2008, and Ray Sumera in August 2008. Nurses Wolfe and Murray each gave statements to the Las Vegas Metropolitan Police Department (LVMPD) regarding the R.C. incident in May and June 2008, respectively. In their police statements, the nurses explained that they had raised concerns about Farmer before his assault on Doe because (1) he was overly attentive to female patients, (2) Farmer was anxious to perform

procedures where female breasts would be exposed and possibly touched, and (3) Farmer was involved in an incident wherein an elderly woman Farmer was attending to yelled, "Get outta here! I don't want you by me!" During the course of the investigation of the R.C. incident, several of Centennial's supervisory employees revealed that they had knowledge of the police reports and the nursing staff's concerns about Farmer.

R.C. filed a complaint against Centennial and Farmer in September 2008 alleging claims of sexual assault, negligence, intentional infliction of emotional distress, negligent misrepresentation, and false imprisonment. After the R.C. incident became public, Doe reported Farmer's sexual assault against her. Doe filed a lawsuit against Centennial in July 2009 for negligent failure to maintain the premises in a safe manner and vicarious liability for Farmer's actions. Centennial retained Hall Prangle to represent it in the Doe case in August 2009.

Prior to the early case conference that was held in November 2009, Centennial filed an initial list of witnesses and documents pursuant to NRCP 16.1. The initial disclosures did not identify nurses Wolfe, Murray, or Sumera as persons with knowledge of relevant facts and did not disclose the existence of the police statements.

In September 2014, Doe filed a motion for summary judgment regarding liability, arguing that Centennial was strictly liable for Farmer's assault. Centennial, through Hall Prangle, filed an opposition to Doe's motion for summary judgment, arguing that strict liability did not apply because "Farmer's actions weren't reasonably foreseeable under the facts and circumstances of th[is] case." As part of their foreseeability argument, Centennial cited to and summarized our decision in *Wood v. Safeway, Inc.*, 121 Nev. 724, 121 P.3d 1026 (2005), stating that "the Nevada Supreme

SUPREME COURT
OF
NEVADA

(O) 1947A

Court concluded that . . . because the assailant had no prior criminal record in the United States or Mexico, and because there w[ere] no prior complaints against the assailant for sexual harassment, that it was not reasonably foreseeable that the assailant would sexually assault a Safeway employee." Based on its interpretation of *Wood*, Centennial argued that "[i]n the instant situation, there were absolutely no known prior acts by Mr. Farmer that could potentially put Centennial Hills on notice that Mr. Farmer would assault a patient." The district court denied Doe's motion, finding that there was a genuine issue of material fact regarding liability, especially whether Farmer's misconduct was reasonably foreseeable.

In April 2015, Centennial, through Hall Prangle, filed a writ petition in this court challenging the district court's order granting in part a motion for summary judgment. In explaining the factual and procedural history of this case, Centennial again explained that it "relied upon this [c]ourt's decision in *Wood v. Safeway, Inc.*, 121 Nev. 724, 737, 121 P.3d 1026, 1035 (2005), and urged that there were no known prior acts or any other circumstances that could have put Centennial Hills on notice that Farmer would sexually assault Ms. Doe." We denied the writ petition, determining that Centennial's right to appeal following trial precluded extraordinary intervention. *See Valley Health System, LLC v. Eighth Judicial Dist. Court*, Docket No. 67886 (Order Denying Petition for Writ of Mandamus or Prohibition, May 20, 2015).

In October 2014, the discovery commissioner ordered Hall Prangle to produce a file provided to them by the LVMPD concerning the Farmer investigation. Doe learned of the nurses' police statements through the LVMPD file provided to them in 2015.

Doe filed a motion for NRCP 37 sanctions related to Centennial's nondisclosure of the three nurses who had been interviewed during the internal investigation as well as their statements to police, seeking to establish that Farmer's misconduct was reasonably foreseeable to Centennial as a matter of law. After briefing and oral argument, the discovery commissioner recommended full admission of the nurses' police statements, that Centennial pay a monetary sanction, and that the district court conduct an evidentiary hearing to determine whether (1) case-terminating sanctions were appropriate based on Centennial's failure to disclose witnesses, (2) it was Centennial's intention to thwart the discovery process and hinder Doe from discovering the relevant facts, and (3) Centennial misled the court. The discovery commissioner also recommended that the sanctions be reduced if Centennial could prove with a degree of probability that they had no knowledge of the witnesses until recently.

In its order setting the evidentiary hearing, the district court informed Hall Prangle and Centennial of the scope and purpose of the hearing, stating that it was considering case-terminating sanctions, whether there was intent to thwart the discovery process, and whether the defendants misled the court. Following the evidentiary hearing, the district court found the following:

> based on evidence that this [c]ourt considers to be clear and convincing, Centennial intentionally and willfully (a) violated its discovery obligations under NRCP 16.1 in failing to timely disclose that nurses Murray, Wolfe, and Sumera possessed relevant and material evidence relating to the central issue in this case—whether it was reasonably foreseeable to Centennial that Mr. Farmer would commit a criminal sexual assault on a patient; and

SUPREME COURT
OF
NEVADA

(O) 1947A

6

(b) violated its duty under NRCP 16.1 to timely disclose the [p]olice [s]tatements which also contained relevant and material evidence relating to the same central issue.

The district court sanctioned Centennial pursuant to NRCP 37 by striking its answer, thereby establishing liability against Centennial, allowing it only to litigate the damages, and ordering Centennial to pay $9,000 to Doe's counsel and $9,000 to Legal Aid of Southern Nevada. As part of its finding that Centennial willfully violated its disclosure obligations, the district court also determined that Hall Prangle violated Rule 3.3 of the Nevada Rules of Professional Conduct by incorrectly representing that it had not withheld any relevant evidence.

Hall Prangle and Centennial filed a motion for reconsideration of the sanction order, arguing that the district court erred by not providing Hall Prangle with the requisite notice that Hall Prangle's conduct was under consideration and finding that Hall Prangle violated RPC 3.3(a)(1) by making a false statement of fact. The district court denied Centennial's motion for reconsideration and clarified that, while it took Hall Prangle's conduct into consideration, it did not sanction Hall Prangle and the sanction order was based on Centennial's misconduct. Subsequently, the parties entered into a settlement agreement with Centennial reserving the right to challenge the sanction order. However, a successful appeal would not alter the terms of the settlement agreement.

Centennial appeals the district court's sanction order, and Hall Prangle filed an original petition for a writ of mandamus challenging the district court's findings of professional rule violations. These cases were consolidated for disposition.

## DISCUSSION

In the appeal, we consider Centennial's argument that the district court abused its discretion when it found that Centennial willfully and intentionally concealed relevant, discoverable information in violation of NRCP 16.1. Next, we must determine whether to entertain a writ petition seeking review of a reputational, rather than a monetary, sanction of an attorney. Because we conclude that a reputational sanction of an attorney is reviewable by writ, we address Hall Prangle's claim that it did not violate RPC 3.3(a)(1).

*The district court acted within its discretion when it struck Centennial's answer as a sanction for violating NRCP 16.1[1]*

### Standard of review

"This court generally reviews a district court's imposition of a discovery sanction for abuse of discretion." *Foster v. Dingwall*, 126 Nev. 56, 65, 227 P.3d 1042, 1048 (2010). When a district court imposes case-ending sanctions, we apply "a somewhat heightened standard of review." *Id.* However, sanctions are not considered case ending when, as here, the district court strikes a party's answer thereby establishing liability, but allows the party to defend on the amount of damages. *Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. 243, 249, 235 P.3d 592, 596 (2010).

---

[1]As a threshold question, we must determine whether this matter is moot since the underlying case has settled. Because Centennial incurred both a monetary (for which they seek recovery) and reputational sanction, we conclude that the sanction order is justiciable notwithstanding the settlement. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 133 (3d Cir. 2009) ("Appellants respond that the settlements did not moot the appeals because the Appellants experienced (and continue to experience) reputational harm. This court's precedent supports Appellants' position.").

 


Noncase-concluding sanctions will be upheld if the district court's sanction order is supported by substantial evidence. *Id.* at 254, 235 P.3d at 599. Furthermore, a district court's "findings of fact shall not be set aside unless they are clearly erroneous and not supported by substantial evidence." *Id.* When a district court adopts the factual findings of a discovery commissioner, they are "considered the findings of the [district] court." *Id.* Finally, "[e]ven if we would not have imposed such sanctions in the first instance, we will not substitute our judgment for that of the district court." *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990).

*NRCP 37 sanctions*

Under NRCP 37(b)(2)(C), when a party fails to make a discovery disclosure pursuant to NRCP 16.1, the district court may make "[a]n order striking out pleadings or parts thereof . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." In *Young*, we articulated the abuse-of-discretion standard with regard to discovery sanctions:

> The factors a court may properly consider include, but are not limited to, the degree of willfulness of the offending party, the extent to which the non-offending party would be prejudiced by a lesser sanction, the severity of the sanction of dismissal relative to the severity of the discovery abuse, whether any evidence has been irreparably lost, the feasibility and fairness of alternative, less severe sanctions, such as an order deeming facts relating to improperly withheld or destroyed evidence to be admitted by the offending party, the policy favoring adjudication on the merits, whether sanctions unfairly operate to penalize a party for the

misconduct of his or her attorney, and the need to deter both the parties and future litigants from similar abuses.

106 Nev. at 93, 787 P.2d at 780.

In its order striking Centennial's answer and establishing liability on Doe's negligence and respondeat superior claims, the district court addressed each *Young* factor. Centennial argues primarily that the district court abused its discretion in its determination of the first *Young* factor—that Centennial willfully and intentionally concealed relevant, discoverable information in violation of NRCP 16.1. Specifically, Centennial argues that the district court misapplied the "collective knowledge doctrine" in reaching its conclusion, and that the district court's finding of willful misconduct is not supported by substantial evidence. We disagree.

*Centennial's misconduct was willful*

In considering the *Young* factors, the district court determined that clear and convincing evidence demonstrated "that Centennial willfully and intentionally concealed the relevance of nurses Murray, Wolfe, and Sumera, and the existence of the [p]olice [s]tatements with an intent to harm and unfairly prejudice [Doe]." In its order denying Centennial's motion for reconsideration, the district court explicitly stated that it did not use or apply the collective knowledge doctrine in reaching its conclusion that Centennial willfully concealed relevant information. In explaining its reasoning, the district court stated: "Simply put, Centennial's management was aware of the knowledge of numerous Centennial staff of various stations, and exhibited an unlawful pattern of suppression and denial over the course of years to [Doe's] detriment."

Centennial acknowledges that the collective knowledge doctrine was not explicitly used or applied by the district court. Nonetheless, Centennial argues that the district court used the doctrine to aggregate the employees' knowledge in order to conclude that Centennial willfully and intentionally concealed information with the intent to harm Doe. Centennial contends that a court cannot find that a corporation acted willfully or intentionally unless at least one employee has a culpable mental state. In support of its argument, Centennial cites to several cases for the proposition that the collective knowledge doctrine cannot be used to impute a culpable state of mind to an employer. Primarily, Centennial relies on *Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD-CWH, 2013 WL 3155306 (D. Nev. June 19, 2013), which held that the collective knowledge doctrine cannot be used to show that an employer acted with actual malice unless "someone in the corporation had the required culpability." *Id.* at *8. Thus, Centennial argues, the district court erred as a matter of law because it did not identify, by name, an employee who acted with a culpable state of mind.

We conclude that Centennial's reliance on the collective knowledge doctrine is misplaced. First, we have never applied the collective knowledge doctrine when reviewing discovery sanction orders. Second, Centennial's reliance on *Ginena* is unpersuasive. *Ginena* involved a defamation claim where, in order to recover, the plaintiffs had to show that the defendants acted with actual malice. *Id.* at *6. Thus, the court was considering the collective knowledge doctrine in the context of establishing the required state of mind for intentional tort liability. *Id.* at *7. Here, the district court was considering whether Centennial willfully chose not to comply with NRCP 16.1 disclosure requirements. Thus, Centennial has not

put forth a persuasive argument that the district court applied, or we should consider, the collective knowledge doctrine in this case.[2]

We further conclude that substantial evidence supports the district court's finding that Centennial willfully concealed relevant evidence. The district court listed a 17-point overview of the evidence it found to amount to clear and convincing proof that Centennial willfully withheld evidence from its NRCP 16.1 discovery disclosure. We conclude that the evidence is supported by the record. For example, Hall Prangle and Centennial conducted the investigation of the R.C. incident well before Doe filed her complaint yet Centennial failed to disclose nurses Wolfe, Murray, and Sumera in its initial NRCP 16.1 disclosures in the Doe case. Thus, we conclude that the district court did not abuse its discretion in making the factual determination that Centennial had knowledge of the relevant evidence and willfully concealed it during discovery.

*The district court did not penalize Centennial for its attorneys' conduct*

Centennial argues that the district court abused its discretion in striking its answer based on Centennial's attorneys' misconduct. Specifically, Centennial argues that, because it is an attorney's

---

[2]The other cases Centennial cites to in support of its reliance on the collective knowledge doctrine are similarly unpersuasive. *See Lind v. Jones, Lang LaSalle Ams., Inc.*, 135 F. Supp. 2d 616, 622 n.6 (E.D. Pa. 2001) (explaining that the collective knowledge doctrine cannot be used to aggregate intent in claims for fraudulent misrepresentation and intentional nondisclosure); *First Equity Corp. of Fla. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 259-60 (S.D.N.Y. 1988) (stating that in a claim for fraud, the collective knowledge doctrine cannot be used to establish intent when a specific employee with the requisite state of mind is not identified); *Reed v. Nw. Publ'g Co.*, 530 N.E.2d 474, 484 (Ill. 1988) (stating that the collective knowledge doctrine cannot be used to establish actual malice in an action for libel).

responsibility to comply with NRCP 16.1, it is unfair to sanction a client for its attorney's failure to comply. We disagree.

As noted above, when considering discovery sanctions, a district court should consider "whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney." *Young*, 106 Nev. at 93, 787 P.2d at 780. The district court took that factor into consideration. Specifically, the district court stated that "[t]he misconduct in this case is clearly that of Centennial, to an equal or greater extent tha[n] its lawyers." The district court went on to explain that Centennial knew about the relevant, concealed evidence, "yet allowed their attorneys to submit no less than [e]ight (8) NRCP 16.1 disclosures that omitted any reference to" the evidence. Finally, the district court pointed out that Centennial provided verifications for all of the false discovery disclosures. Accordingly, the district court did not unfairly penalize Centennial.

*The other Young factors support the district court's decision*

Centennial argues that the sanction the district court imposed was extreme when considering the other *Young* factors. First, Centennial argues that the sanction violates Nevada's public policy of deciding cases on the merits. Second, Centennial argues that the sanction was unnecessary because Centennial was unlikely to engage in future misconduct. Finally, Centennial argues that the district court's finding that Doe was prejudiced by the NRCP 16.1 violation was speculative.

As with the other *Young* factors, the district court considered Centennial's arguments and explained, in detail, why they fail. With regard to Nevada's policy of deciding cases on the merits, the district court decided that the only way to undo the prejudice created by Centennial was to strike Centennial's answer. Furthermore, the district court correctly pointed out that striking Centennial's answer was not a case-concluding sanction.

Indeed, Centennial was still able to litigate the measure of damages. Therefore, with respect to this *Young* factor, the district court did not abuse its discretion.

Similarly, the district court acted within its discretion when it decided that striking Centennial's answer would effectively deter future sanctionable conduct. Centennial argues that it is unlikely to repeat its misconduct, but the *Young* court explicitly stated that a court should consider "the need to deter both the parties *and future litigants* from similar abuses." *Young*, 106 Nev. at 93, 787 P.2d at 780 (emphasis added). The district court stated that it intended to "deter future misconduct by Centennial." But the district court also considered its order's effect on future litigants by stating that "[n]o party should be allowed to conceal evidence, and then suffer merely a monetary sanction, while being allowed to reap the tactical benefit of the loss of that evidence. Litigants should be entitled to have their cases adjudicated on the merits."

Finally, the district court considered the prejudice that had already materialized as a result of Centennial's NRCP 16.1 violation. Specifically, the court stated that the prejudice to Doe was that "memories . . . fade[ ] over time" and that any lesser sanction would not mitigate that prejudice. The court also noted that because the lost evidence potentially went to a central issue in the case, substantial prejudice would linger if the court imposed any alternative sanction. Thus, the district court did not abuse its discretion in striking Centennial's answer.

*Hall Prangle's writ petition is denied because the district court's sanction was a fair comment on the attorneys' conduct*

Hall Prangle filed an original petition for a writ of mandamus in this court, arguing that the district court improperly sanctioned Hall

Prangle for violating RPC 3.3(a)(1).[3] Hall Prangle also argues that the district court's sanction was an abuse of discretion because (1) Hall Prangle did not receive the required notice that the district court was considering attorney sanctions, and (2) Hall Prangle did not violate RPC 3.3(a)(1). Doe, the Eighth Judicial District Court, and the Honorable Richard Scotti (collectively, the District Court Judge) filed answers to Hall Prangle's petition.

*Petition for writ relief should be entertained*

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion. NRS 34.160; *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). "This court has discretion to entertain a petition for extraordinary writ relief." *Bradford v. Eighth Judicial Dist. Court*, 129 Nev. 584, 586, 308 P.3d 122, 123 (2013). However, we will exercise that discretion "only when there is no plain,

---

[3]Specifically, the district court stated in its order:

> Rule 3.3 of the Nevada Rules of Professional Conduct states "(a) A lawyer shall not knowingly: (1) Make a false statement of fact or law . . . to [a] tribunal by the lawyer." Centennial's lawyers violated this Rule.

> Centennial incorrectly represented to the Nevada Supreme Court that it had not withheld any relevant evidence. Centennial stated: "there were no known prior acts or any other circumstances that could have put Centennial on notice that Farmer would sexually assault Ms. Doe." Again, Centennial's lawyers violated Rule 3.3.

(Citation omitted.)

speedy and adequate remedy in the ordinary course of law or there are either urgent circumstances or important legal issues that need clarification in order to promote judicial economy and administration." *State v. Eighth Judicial Dist. Court (Logan D.)*, 129 Nev. 492, 497, 306 P.3d 369, 373 (2013) (internal quotation marks omitted). It is petitioner's burden to demonstrate that our extraordinary intervention is warranted. *Otak Nev., LLC v. Eighth Judicial Dist. Court*, 129 Nev. 799, 804, 312 P.3d 491, 495 (2013).

We have consistently held that an appeal is generally an adequate legal remedy precluding writ relief. *Bradford*, 129 Nev. at 586, 308 P.3d at 123. However, "[s]anctioned attorneys do not have standing to appeal because they are not parties in the underlying action; therefore, extraordinary writs are a proper avenue for attorneys to seek review of sanctions." *Watson Rounds, P.C. v. Eighth Judicial Dist. Ct.*, 131 Nev. 783, 786-87, 358 P.3d 228, 231 (2015).

Although the district court did not impose monetary sanctions against Hall Prangle, the court did find that Hall Prangle twice violated RPC 3.3(a)(1). As discussed below, we conclude that this amounts to a reputational sanction and provides a basis to entertain Hall Prangle's petition. *See Martinez v. City of Chi.*, 823 F.3d 1050, 1053 (7th Cir. 2016) ("[A] finding of attorney misconduct in a sanctions order can seriously impair an attorney's professional standing, reputation, and earning possibilities. . . . Such an injury, inflicted in a formal judicial order, can be serious enough to make the order appealable.") We find *Martinez* persuasive and conclude that the importance of an attorney's reputation alone provides a basis for justiciability where the district court made a finding that the attorney violated the rules of professional conduct.

In *United States v. Talao*, 222 F.3d 1133, 1135 (9th Cir. 2000), the United States Court of Appeals for the Ninth Circuit considered an appeal by an assistant United States attorney challenging a finding by the federal district court that she violated the California Rules of Professional Conduct. The court first addressed the issue of whether the district court's finding provided a basis for an appeal. *Id.* at 1137. In concluding that it did, *id.* at 1138, the Ninth Circuit distinguished the district court's finding of ethical misconduct from "mere judicial criticism," *id.* at 1137, explaining:

> The district court in the present case . . . did more than use "words alone" or render "routine judicial commentary." Rather, the district court made a finding and reached a legal conclusion that [the attorney] knowingly and wilfully violated a specific rule of ethical conduct. Such a finding, *per se*, constitutes a sanction.

*Id.* at 1138.

This approach is followed in the majority of federal circuits and has support in other state courts. *See, e.g., Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1168 (10th Cir. 2003) (stating that "damage to an attorney's professional reputation is a cognizable and legally sufficient injury"); *Walker v. Mesquite Tex.*, 129 F.3d 831, 832-33 (5th Cir. 1997) (holding "that the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct"); *Sullivan v. Comm. on Admissions & Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967) (holding that a finding of professional misconduct not accompanied by other sanctions is analogous to a defendant found guilty but given a suspended sentence and is appealable); *State v. Perez*, 885 A.2d 178, 187 (Conn. 2005) ("[A] judicial finding of professional misconduct is tantamount to an official sanction,

irrespective of whether the finding is made in the context of a formal grievance proceeding.").

The vast majority of courts that have considered the issue have held that a finding that an attorney has violated a specific rule of professional conduct is tantamount to a sanction. Additionally, several states have commented on a trial court's inherent authority to sanction an attorney for improper conduct due to violation of the rules of professional conduct. *See Wong v. Luu*, 34 N.E.3d 35, 48 (Mass. 2015) (upholding a lower court's determination that an attorney had violated a rule of professional conduct because "it is plain that the inherent powers of the court include the authority to sanction an attorney for such misconduct, regardless of the adjudication of any complaint before the board for violation of this rule"); *Westview Drive Invs., LLC v. Landmark Am. Ins. Co.*, 522 S.W.3d 583, 616 (Tex. App. 2017) ("Courts have the inherent power to discipline attorneys, and the Texas Supreme Court has addressed some violations of the disciplinary rules under both the State Bar's disciplinary system and its own inherent powers."); *Featherstone v. Schaerrer*, 34 P.3d 194, 200 (Utah 2001) (holding that the trial court did not exceed its authority in finding a violation of the rules of professional conduct, because holding otherwise "would bind the 'inherent powers' of judicial regulation by allowing attorneys who have violated the ethics code to hide behind the guise that only the state bar association may enforce the rules"). We are persuaded by the reasoning of these federal and state courts finding that a reputational sanction is reviewable and conclude that a district court has inherent authority to cite to the rules of professional conduct as part of its authority to regulate attorney misconduct in the courtroom:

> [T]he power to sanction defense counsel in the instant case derived from the inherent powers of a

 

> trial court to control proceedings before it. It has been cogently stated that [a] trial judge is under a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop . . . professional misconduct.

*Young v. Ninth Judicial Dist. Court*, 107 Nev. 642, 646, 818 P.2d 844, 846 (1991) (second alteration in original) (internal quotation marks omitted). We, therefore, entertain Hall Prangle's writ petition and consider whether the reputational sanction was warranted considering Hall Prangle's conduct.

### *The district court properly found that Hall Prangle violated RPC 3.3*

RPC 3.3 provides in relevant part: "(a) A lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal." As noted above, the district court found that Hall Prangle twice violated RPC 3.3(a)(1). The district court found that Hall Prangle first violated RPC 3.3(a)(1) when, in its opposition to summary judgment, it stated: "In the instant situation, there were absolutely no known prior acts by Mr. Farmer that could potentially put Centennial on notice that Mr. Farmer would assault a patient." The district court found another RPC 3.3(a)(1) violation when Hall Prangle, in its first writ petition in this court, stated: "there were no known prior acts or any other circumstances that could have put Centennial on notice that Farmer would sexually assault Ms. Doe." The district court found that each of these statements constituted violations of RPC 3.3(a)(1) because they were false statements of facts made by a lawyer to a tribunal.

Hall Prangle argues that its statement to the district court could not have constituted a rule violation because it was not a purely factual statement, but rather, argument intertwined with opinion regarding the evidence relating to reasonable foreseeability. Hall Prangle further

argues that its use of the statement in its writ petition was appropriate because it was used in the context of explaining what arguments they made in the district court and was thus a factually accurate statement.

The district court concluded that the statement in Centennial's opposition violated the rule because it falsely represented that Centennial had no notice of prior behavior indicating that Farmer might assault a patient in the future. Specifically, the district court found that Centennial hired Hall Prangle to investigate Farmer's assault, which included the nurses' previous concerns about Farmer's behavior with patients. Thus, Centennial and Hall Prangle had knowledge of Farmer's conduct that would put them on notice that a sexual assault was foreseeable. The district court's finding in that regard is supported by the record. Thus, the district court acted well within its discretion in finding that Hall Prangle violated RPC 3.3(a)(1) in its statement to the district court. However, we note that the false statement as used in Hall Prangle's writ petition was included in the petition's procedural history to explain what Hall Prangle argued in the district court. Thus, it was an accurate statement in that it correctly represented the false statement Hall Prangle argued in the district court. Nonetheless, we hold that the record supports the district court's sanction because, at least in the district court, Hall Prangle knowingly made a false statement in violation of RPC 3.3(a)(1).

*The district court's sanction complied with due process*

Hall Prangle argues that it was deprived of due process because the district court did not give it notice that it was considering attorney sanctions. The parties agree that when a district court is considering attorney sanctions, the attorney is entitled to notice that his or her conduct is at issue. The parties disagree, however, about what satisfies the notice requirement. The District Court Judge argues that the notice requirement

was satisfied here because Hall Prangle knew that the district court would consider its conduct in its *Young* analysis and Centennial accused Hall Prangle of violating RPC 3.3(a)(1) during litigation. Hall Prangle argues that it is the tribunal considering sanctions, not opposing counsel, that is required to give particularized notice that it is considering sanctions.

Due process principles require that an attorney accused of professional misconduct receive notice of the charges levied against him or her. *See Lioce v. Cohen*, 124 Nev. 1, 26, 174 P.3d 970, 986 (2008) ("[T]he district court may, on a party's motion or sua sponte, impose sanctions for professional misconduct at trial, after providing the offending party with notice and an opportunity to respond."); *see also Randolph v. State*, 117 Nev. 970, 982 n.16, 36 P.3d 424, 432 n.16 (2001) (issuing a contemporaneous order to show cause to the attorney so he could explain why sanctions should not be imposed). Here, the district court entered an order setting the evidentiary hearing based on the discovery commissioner's report and recommendations. In that order, the district court informed the parties of the hearing's scope and purpose:

> The purpose of the evidentiary [h]earing shall be to determine (1) if case terminating sanctions are appropriate based on the conduct of failing to disclose witnesses; (2) whether or not th[ere] was intention to thwart the discovery process in this case, and hinder [p]laintiff to discover[ ] the relevant facts[;] and (3) a failure to let the [c]ourt know what was going on in the case and whether the . . . [d]efendants misled the [c]ourt.

The order did not mention that the district court would be considering sanctions against Hall Prangle and specifically indicated that the court

would only be considering whether the defendants, not Hall Prangle, misled the court. Thus, this notice was deficient under due process principles.

The District Court Judge argues that, even if Hall Prangle did not receive the required notice that the district court was considering attorney sanctions, any deficiency was cured through Hall Prangle's motion for reconsideration. In support of its argument, the District Court Judge cites to *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219 (10th Cir. 2015). In *Sun River*, the United States Court of Appeals for the Tenth Circuit determined that an order sanctioning an attorney was procedurally defective because the attorney was not afforded the proper notice. *Id.* at 1230. The court acknowledged that "[a]dvance notice that the court is considering sanctions and an opportunity to respond in opposition is, of course, required." *Id.* However, the court concluded that the procedural defect was cured because the attorney "had a full opportunity to brief his various objections to imposition of the . . . sanction in conjunction with [a] motion for reconsideration." *Id.* at 1231. Thus, the court concluded that the motion for reconsideration cured any defect in connection with the initial imposition of sanctions because "the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Id.* at 1230 (internal quotation marks omitted).

Here, Hall Prangle filed a motion for reconsideration of the district court's sanction order in which it extensively briefed the due process issues it now raises before this court. Furthermore, Hall Prangle argued in its motion for reconsideration that it did not engage in intentional misconduct and did not violate RPC 3.3(a)(1). Consistent with the Tenth Circuit, we conclude that a subsequent opportunity to fully brief the issue

of imposition of attorney sanctions is sufficient to cure any initial due process violation, and any notice deficiency was similarly cured in this case.

## CONCLUSION

We hold that the district court acted within its discretion when it struck Centennial's answer as a sanction for its violation of NRCP 16.1. First, district courts are afforded discretion when imposing sanctions and those determinations will generally be upheld even if we would not have imposed such sanctions in the first instance. *See Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). Second, even though it did not impose case-concluding sanctions, the district court conducted a thorough analysis of each *Young* factor in its 38-page sanction order. Third, Centennial's reliance on the collective knowledge doctrine is misplaced because we have not applied the doctrine to court-imposed sanctions, and the cases Centennial cites to only address the application of the doctrine in intentional tort actions. Finally, in its order denying Centennial's motion for reconsideration, the district court expressly considered, and rejected, Centennial's assertion that the court either misapplied the collective knowledge doctrine or sanctioned Centennial for its attorneys' conduct. Thus, we hold that the district court did not abuse its discretion and we affirm its order striking Centennial's answer.

We further conclude that a district court finding that an attorney violated a specific rule of professional conduct is a reputational sanction, and that the district court properly found that Hall Prangle violated RPC 3.3(a)(1). Finally, we conclude that, although Hall Prangle was not provided sufficient notice that its conduct was under review, any

SUPREME COURT
OF
NEVADA

(O) 1947A

23

initial notice deficiencies were subsequently cured by Hall Prangle's motion for reconsideration. We therefore deny Hall Prangle's petition for a writ of mandamus.

_____, J.
Hardesty

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Pickering

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A